**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Cory Wallace, Sandra Wallace and the conjugal society formed by both<br><br>    Plaintiffs<br><br>    v.<br>ESJ Resort, LLC d/b/a Fairmont El San Juan Hotel; Chubb Insurance Company;  X COMPANY;  B INSURANCE COMPANY;<br><br>    Defendants | Civil no.<br><br>Plaintiffs Demand Trial by Jury |

**COMPLAINT**

TO THE HONORABLE COURT:

**Come now** the Plaintiffs, Cory Wallace, Sandra Wallace and the conjugal society formed by both represented by the undersigned attorneys, and before this Honorable Court respectfully allege and pray as follows:

## I. THE PARTIES

1.   Plaintiffs, Corey Wallace and Sandra Wallace are both of legal age, married to each other and domiciled in the State of Florida.

2.   Mrs. and Mrs. Wallace are the members of the Wallace Conjugal Society.

3.  By information and belief, Co Defendant, ESJ Resort, LLC (hereinafter "ESJ Resort") is a limited liability company organized under the laws of Delaware, that has its principal offices located in Carolina, Puerto Rico.

4.  ESJ Resort, conducts part of its business in Puerto Rico as Fairmont El San Juan Hotel and/or Fairmont El San Juan Villas.

5.  ESJ Resort is the owner of, manager and administrator of Fairmont El San Juan Hotel, located in Carolina, Puerto Rico, and is the employer of the hotel staff that works with the hotel owned bicycles as further averred in the complaint.

6.  By information and belief, the sole members of ESJ Resort are natural persons domiciled in the State of New York and in Puerto Rico.

7.  By information and/or belief, CHUBB Insurance Company of Puerto Rico is a duly registered insurance company authorized to conduct business in the Commonwealth of Puerto Rico, that at the time of the accident described in this complaint had issued and had in full force and effect, one or more insurance policies to cover the legal liability for negligence for accidents caused by negligence as further described in this complaint.

8.   X Company is the fictitious name used to denominate another company that also owns, operates and manages, Fairmont El San Juan Hotel and/or Fairmont El San Juan Villas and/or that is the employer of the Fairmont El San Juan hotel staff.   Once said unknown defendant has been properly identified, the complaint may be amended to include the properly named defendant in an amended complaint.

9.   B insurance company, is the fictitious name used to denominate the currently unknown insurance company that at the time of the accident described in this complaint had issued and had in full force an effect an insurance policy to cover the liability of the Fairmont El San Juan Hotel and/or Fairmont El San Juan Villas property, hotel owners and their employees for negligence for the accident described in the present complaint. Once the identity of said insurance company is made known, the complaint may be amended so as to include the proper insurance company defendant as an additional defendant to this complaint.

## II. JURISDICTION

7.   This Honorable Court has subject matter jurisdiction to entertain the instant case pursuant to *28 U.S.C. section 1332 (a) (1) be*cause this is a case or controversy between citizens of different states and the amount in controversy

is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8.    Pursuant to 28 U.S.C. Section 1392 (a) (2), venue of this action is proper in this district because the events, acts or omissions giving rise to the claims occurred in Puerto Rico.

### III. <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

9. The accident that gives origin to the present case occurred on March 29th, 2023, and as per the Civil Code of Puerto Rico of 2020, and in particular Article 1204, 31 LPRA § 9496 at the time of filling the complaint the statute of limitations of one (1) year has not elapsed.

### IV. <u>THE FACTS AND THE DAMAGES</u>

10.    Plaintiff, Cory Wallace, was staying as a hotel guest at the Fairmont El San Juan Hotel (hereinafter referred to as "Fairmont" ) on March 29, 2023.

11.    In the afternoon of March 29th, Mr. Wallace proceed to the area where the hotel has numerous hotel owned bicycles for the gratuitous use of its hotel guests.

12.    The attendant, an employee of the hotel, proceeded to give possession of one of the hotel bicycles for the use of Mr. Wallace, a Priority Classic Plus bicycle with the Fairmont

hotel logo. At the moment of giving possession, the hotel employee failed to give any type of warnings to Mr. Wallace regarding the condition of the bicycles, inspection, repairs and maintenance, and advising Mr. Wallace that he should completely inspect the bicycle prior to using the same.

13. Mr. Wallace accepted the use of bicycle and proceeded to ride the same in areas close to the hotel.

14. After riding the hotel owned bicycle for various minutes, through no fault of Mr. Wallace, while in movement, the front tire of the bicycle without warning locked, causing the bicycle to suddenly stop, and for Mr. Wallace to be violently thrown off the bicycle, over the hand rails of the bicycle, landing various feet to the front of the bicycle.

15. Mr. Wallace suffered serious injuries to various parts of his body as a result of the sudden stop of the bicycle and violent fall. He seriously injured his left wrist as a result of the fall.

16. After he was able to regain composure, he examined the bicycle and noticed that what caused the bicycle to suddenly stop and the front wheel to lock, is that the front brake caliper of the bicycle had become completely loose during the ride and had lodged itself to the spokes of the front wheel, causing by said defect for the front wheel of the

bicycle and the bicycle to suddenly lock and stop, and the terrible violent fall suffered by Mr. Wallace.

17. After the accident Mr. Wallace reported the occurrence of the accident, received emergency medical treatment at the San Juan Veterans Administration Hospital, and later at a Veterans Hospital in the State of Florida.

18. As a result of the accident Mr. Wallace, who is left hand dominant and who is employed as a commercial Airline pilot, was diagnosed as having suffered an Acute comminuted intra-articular fracture of the distal radial metaphysis, extending to the distal radial ulna, among other injuries.

19. X Ray studies performed discovered additional damages, to include mild displacement of multiple fracture fragments and volar displacement of the carpal rows with respect to the radius. He was told by Doctors that he needed surgery.

20. When Mr. Wallace returned to his home he was further evaluated and scheduled for surgery for the month of April, 2023. He was operated for his damages to the left wrist. As a result of the operation, he received an open reduction internal device with 10 surgical screws.

21. After the operation, Mr. Wallace had to endure a very long recovery period that included multiple sessions of physical therapy.

22.  To this date Mr. Wallace still complains of pain.  His left wrist continues swollen and he has limited movement of his left wrist compared with his right wrist.

23.  Mr. Wallace is no longer able to perform various activities and pleasures of life that he enjoyed with his wife prior to the accident.

24.  The accident also caused Mr. Wallace to not be able to work for various months as a commercial airline pilot, since the complete use of both his hands is a necessity for him to work as a commercial pilot.

25.  To this date, plaintiff has permanent damages and still suffers from pain, mental anguish, discomfort, distress, and embarrassment.  For various months after the accident Mr. Wallace feared that his work as a commercial pilot was over, this caused him to also suffer anxiety and further mental anguish. He has permanent damages, since he has marked limitation of movement in his left wrist compared to his right wrist and he know has surgical hardware in his left wrist. He also now has an approximately 3-inch scar due to his left wrist operation.

26.   The value of all his damages related to his injuries, to include past, present and future pain, physical damages, permanent damages and permanent impairment, and mental

anguish is estimated in a sum in excess of **SIX HUNDRED AND FIFTY THOUSAND DOLLARS ($650,000.00)**

27. As a result of the accident Mrs. Wallace also suffered.  She suffered at seeing her husband in pain, anxious and frustrated since he was not able to work for various months as a commercial airline pilot.  This also caused her to suffer mental anguish as well.

28. She also suffered at not being able to enjoy to the same extent various activities and pleasures of life that she was able to enjoy and carry out with her husband prior to the accident.

29. The damages suffered by Mrs. Wallace as a result of the hotel and hotel employee negligence and the defectively maintained hotel bicycle, is reasonably estimated in a sum in excess of **ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000).**

**ECONOMIC DAMAGES**

30. As a result of the accident caused by the negligently maintained hotel bicycle and the negligence of the Hotel, Mr. Wallace was not able to work as a commercial airline pilot for various months during his recovery.  His loss of loss wages as a result of the accident is reasonably estimated in a sum of money in excess of **SIXTY THOUSAND**

**DOLLARS ($60,000),** a sum of money that is an economic loss suffered by the conjugal society.

31.  In addition, the Wallace conjugal society will have to incur in a number of unwanted expenses related to this accident that are reasonably estimated in excess of **TWENTY THOUSAND DOLLARS ($20,000)** an additional loss for the Wallace Conjugal society and that is also owed to the conjugal society by the defendants.

**LIABILITY**

25.  The accident resulting in the serious, severe and permanent damages suffered by Mr. Wallace, was due to the exclusive fault and negligence of the defendant and its employees, and as a result of a defective and unserviceable hotel bicycle.

26.  The defendant and its employees, should have never provided a broken bicycle to Mr. Wallace that was lacking proper inspection and maintenance.

27.  The accident would not have happened if the bicycle entrusted to Mr. Wallace had been properly maintained and cared for by the hotel and its employees. Yet, they failed to act.

28. At the very least, the hotel and its employees should have inspected, repaired and properly maintained the bicycle before giving the same to Mr. Wallace.

29. As Inkeeper's, Defendants' and their employees had a duty towards Mr. Wallace and failed to properly maintain the hotel owned bicycle well maintained, and in good working order.

30. Defendants and their employees, prior to giving possession of the bicycle to Mr. Wallace, failed to inform Mr. Wallace of the poor state and condition of the hotel owned bicycles.

31. Defendants and their employees, prior to giving possession of the bicycle to Mr. Wallace, failed to warn Mr. Wallace that little and/or no maintenance had been performed on the hotel bicycle and thus that the bicycle could be in a state of disrepair.

32. Defendants and their employees, prior to giving possession of the bicycle to Mr. Wallace, failed to warn and inform Mr. Wallace that due to the lack of maintenance, inspection and repair, the bicycle used by Mr. Wallace could suffer a mishap while Mr. Wallace used the same.

33. Defendants and their employees, failed to warn Mr. Wallace, that since the inspection, maintenance  and repair program

for the bicycles was lax and/or none existent, Mr. Wallace should thoroughly inspect the bicycle prior to use.

34. The hotel failed to have as part of its employees, properly trained employees to fix and repair the hotel bicycles.

35. The hotel and the hotel management failed supervise in order to ensure that its hotel employees entrusted with the inspection, maintenance and repair of hotel bicycles, were properly performing the duties assigned.

36. If Mr. Wallace had been properly warned as per all the previous averments, he would have never agreed to ride the defective broken bicycle, an action that placed his life at risk when the accident happened. Defendants are responsible to Mr. Wallace for their lax of warnings, lack of information, and of supervision as previously averred.

37. The defendants and their employees, with their lax and careless attitude in not properly and timely inspecting, repairing and/or maintaining the hotel bicycle, allowed the accident to happen and the terrible consequences of the accident suffered by the plaintiffs.

38. As Inkeeper's, Defendant and its employees, as part of the their obligations to maintain all of its hotel property to include the hotel-owned bicycle used by Mr. Wallace, should have noticed that front brake caliper was loose and that the

bicycle should not be operated by a hotel guest. Yet they were negligent and failed to take proper inspection, repair and maintenance measures, allowing by their lack of proactive action for the accident to happen.

39. Rather than identifying the state of disrepair of the bicycle, defendants gave possession of the bicycle without properly inspecting the same, allowing via said careless action the accident suffered by Mr. Wallace and all of the damages suffered by the plaintiffs.

40. At all material times, all the defendants, and their employees, and in particular the employees that work in the bicycle area, had a duty to inspect, monitor, maintain and repair bicycles, so that when a hotel guest has the use of the same, and avoidable accident would not happen.

41. At all material times, all the defendants, and their employees, and in particular the employees entrusted with the hotel-owned bicycles, had a duty to warn Mr. Wallace of the inherent dangers of a broken bicycle in need of repair. Yet they failed to act.

42. The accident would not have happened if not for the joint fault and negligence of all the defendants and their hotel employees that work with the hotel bicycles.

43. As Puerto Rico Innkeepers' and as owners, supervisors, operators and/or administrators, and employees of a hotel, the defendants and their employees are the only entities responsible for their lack of adequate actions to identify, repair and eliminate the dangerous condition that improperly maintained, inspected and repaired bicycles represent.

44. Pursuant to Puerto Rico law, and in particular, Article 1536 of the Civil Code of Puerto Rico, all defendants are jointly and severally liable for the damages claimed herein as a result of the accident described in this complaint suffered by Mr Wallace, Mrs. Wallace and the Conjugal society formed by both.

45. All insurance company defendants, as per the insurance code of Puerto Rico, are directly liable to the plaintiffs as per the terms of the insurance policies in effect at the time of the accident.

46. Plaintiffs demand trial by jury.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter judgment for plaintiffs, for the relief demanded in the complaint with the imposition of reasonable attorneys' fees and costs.

In San Juan, Puerto Rico, this 27th day of March, 2024.

**RIVERA-ASPINALL, GARRIGA**
**& FERNANDINI LAW FIRM**
Attorneys for Plaintiffs
1647 Adams Street
Summit Hills
San Juan PR 00920
Telephone: (787) 792-8644
Facsimile: (787) 792-6475
Email: aspinall@ragflaw.com

**S/Julian Rivera Aspinall**
Julian Rivera-Aspinall

USDC# 208506